Good morning. We're here today for case number three, appeal number 19-2104, Robert Farnik v. City of Chicago. We're going to begin with counsel for the appellant, Mr. Miller. I've been pleased to court. My name is John Miller and I'm here arguing on behalf of the Mr. Miller, Mr. Miller, were you involved in the trial of this case? I was not, Your Honor. We're aware of the facts, of the facts that were alleged in the underlying complaint. I'm much more interested here in the legal arguments, I guess, starting with the argument regarding the continuance. I looked at the record and maybe I'm missing something, but it appears to me that your client or your client's counsel asked for an hour continuance. The judge gave your client 30 minutes. Your client's counsel said, we'll take it. Thank you, Your Honor. And now we're here on appeal on that issue. Yes, Your Honor. What was wrong with that? How did the district court, what did the district court do wrong there? Well, there was no effort there at all. The plaintiff's counsel clearly knew what he needed, that he felt he needed an additional half hour. He needed an hour to get his client's head back in the game. But Mr. Miller, he said, or she, she said she'll take a half hour. What's the district court to do? And then, and then I think further, the district court inquired of your client regarding the timing of the trial. And it appeared to me that your client had a witness that he wanted to testify after he testified that same day, and he wanted to get him on the stand. And that's why your client went on the stand that day. And then by the way, and then by the way, there was another thing here that I'd like you to address, which is, it seems to me that your, your client totally disregarded the district court's order regarding the, uh, the questions about why he was late. The district court told him, don't get into it. He got into it. And now that's an issue on appeal when he, he, he was asked the question and he answered it. I'm not sure what we're supposed to do with that. Well, your Honor, that, uh, first it wasn't the client, of course, that, uh, disregarded the court's order, but that one cryptic statement about, uh, I lost my best friend, uh, is more confusing than explanatory. It could mean a great variety of things. I think it was, well, I think it was cleared up in the very next question. Is that why you were late for court? Yes, sir. Yes, but that doesn't explain that somebody died as compared to I had an argument with my best friend. Uh, I had a fight with my wife. There's a variety of things here that that could have meant that I think the jury was entitled to know why at this point the plaintiff arrived late, arrived in the disheveled condition, was having trouble focusing on his testimony. And it wasn't going to prejudice the jury. It wasn't going to evoke sympathy. It was simply an explanation. And there was no, uh, apparent effort here in the court who said simply we should soldier on to weigh the benefits and the burdens of permitting this testimony to go forward. What about the closing argument damages issue? It seems like there was an issue that was raised in closing argument where, uh, the city council said that, uh, the defendant was trying, or I'm sorry, the plaintiff was trying to take money out of the police officer's pocket, which as far as I can tell from the record is true. Uh, trial council then objected and the district court allowed plaintiff's counsel to clear that up in their rebuttal and explain the difference between punitive and compensatory damages. What was wrong with that? Well, I don't think that the, uh, the plaintiff's counsel trying to explain the difference is the same thing as the court explaining the difference. If the improper argument was made, I think the court should have explained the indemnification for compensatory damages and that anything out of the police officer's pocket would have only been punitive damages. The original statement by a defendant's counsel was that the entire thing was going to your, if you're working as your Chicago police officer, you probably don't have that kind of money in the bank. So it was an effort to cast the plaintiff in a bad light, trying to bankrupt the Chicago police officer. Uh, but I don't think it's adequately addressed simply by, uh, plaintiff's counsel who's obviously arguing on behalf of plaintiff, uh, to correct that or argue about it in closing argument when the judge should have made the distinction. Again, it's a matter of the benefits and the burdens and explanation from the court wasn't going to hurt anything here. Thank you, Mr. Miller. Would you like to preserve the remainder of your time? Uh, yes. Yes, I would. Your honor. Thank you. Thank you, Mr. Miller. Ms. Masters, we'll move to you on behalf of the appellee. The district court rightly rejected the plaintiff's arguments for a mistrial or a new trial on their claims arising from Mr. Farnick's arrest. As set forth in our briefs, the plaintiffs raised multiple errors on appeal, none of which warrant reversal. The district court was well within its discretion in the manner it handled juror voir dire. The plaintiff's claims regarding the purported erroneous denial of a continuance are contrary to the record and in any event not an abuse of the the trial counsel accepted half an hour and never ever asked for additional time once the client took once Mr. Farnick took the stand and expressed any type of, you know, whatever they thought was going on that he wasn't ready to testify. That issue was never raised again. They never asked for further continuance so there was no error there. Any issue regarding the jury instructions either didn't happen or for reasons we explained in our brief was harmless. Talking about the punitive damages issue, first of all the testimony that the statement that Officer Horan would be liable for damages was true. It was accurate and there wasn't a statement that she was going to be responsible for the entire amount. To the extent that there was any lack of clarity, it was clearly corrected by counsel in rebuttal. He was allowed to fix that and there is, and as we point in out in our brief, the requirement that the standard of review on giving a limiting instruction is abuse of discretion. The other issue regarding jury instructions on probable cause, again as we explained in our brief, case law supported giving the probable cause instruction that was given and in any event any error was harmless because the two issues of animal neglect and animal abuse are so closely related that there was probable cause which is a reasonable suspicion to believe a crime had been committed and there was ample evidence that there was reasonable suspicion to believe some type of crime regarding animal care, caretaking of the animals had occurred and so it was proper to give those instructions. And as all, anyway as we explained in our brief, cases like U.S. versus Cardena and even the Bonin case supplied cited by the plaintiff in reply indicates that the error has to be harmless and there was ample evidence here of probable cause to support the arrest. If the court has no questions, we would rest on the briefs for all other points and ask that the judgment be affirmed. Thank you. No further questions. Thank you, Ms. Masters. Mr. Miller, we'll go back to you for rebuttal. Thank you, your honor. With respect to the subject of jury instructions, I think giving the wrong jury instruction is not an abuse of discretion but an error of law. But even if it is an abuse of discretion, it would meet that standard. Now when jury instructions were discussed in open court before the start of the trial, counsel Marks agreed from the city of Chicago that there was no other charge here than animal cruelty and that the third paragraph of Seventh Circuit Patent Jury Instruction 7.08 should not be part of the jury instruction. Nevertheless, we ended up giving that instruction which the committee comments say should be based only in the appropriate situation when there's multiple charges. When here there are not multiple charges. There's a single charge of animal cruelty and that was dropped when the state's attorney received evidence as to how much care was being given what was not an abused animal but which was an old and sick animal. We then have this issue of animal neglect coming up which was not a charge but which with the instruction is elevated to the level of a charge. He was never charged with animal neglect. Mr. Miller, can I ask you a question? When the court was doing the instruction conference, I think this was in front of the jury and that's my question. When the court made the error that you've said the court made, did the court in front of the jury, on the city's brief at page 31, they say the court, the judges, it's not necessary that defendant have probable cause to arrest plaintiff for all the crimes he was charged with. I think that may be irrelevant in this case, correct? And then your client's counsel said yes and the court said was she charged with more than one crime? Answer, no. No, your honor. Based on the instructions in the conference we had this morning, that was the edited portion. And then the judge reads, did that occur in front of the jury that exchange? My understanding is that occurred in front of the jury, yes, your honor. But then we also had, and then we have that comment by the judge. Well, I think there's only one, but I'm going to read it, which I think is incredibly confusing because it confuses me. If there was only one charge, then you're not supposed to read that third paragraph. But you went ahead and read it anyway. And we assume that jurors follow the one charge. And then we're instructed as to the elements of this second charge. Now, we don't think this second charge, the charge of animal neglect, even arises to an element of probable cause under the second paragraph, let alone the third. The uncharged in Cohate charge, which one was not arrested, never charged, but could supply a basis for probable cause. As stated, the city agreed this charge at the beginning of trial was not an element. Later on, they pushed it forward based on evidence coming out at the trial. So this is a theory that is developed during the trial, after everybody has looked at photographs, after preparation for testimony. It wasn't something that the police officer observed at the time that could form the basis for a probable cause. I'd like to also comment for a minute on the juror problem with Juror McGrath, which we contended kind of soured the trial at the beginning. Here we have a fellow regular human being, a fellow potential juror, who makes negative remarks about the plaintiffs and emphasizes those negative remarks on the way out of the courtroom. And this was never adequately dealt with. The court, if the mistrial was too much, could have questioned the jury, could have brought it to the jury's attention. Don't pay attention to this. It's very difficult to know what prejudices juries. I'm 72, and I don't know, but I think a regular person making those remarks might have. Well, thank you, Mr. Miller. We appreciate your arguments. Thank you, Ms. Masters. We appreciate your arguments, and we'll take the